No. 22207.

MABLE E. HUGULEY *v.* VAUGHN TROLINGER AND
JOSEPHINE TROLINGER.
*(452 P.2d 1006)*

Decided April 7, 1969.

1

WILLIAMS, TAUSSIG & TRINE, JOHN G. TAUSSIG, JR., JOEL H. GREENSTEIN, for plaintiff in error.

SHELDON and NORDMARK, RICHARD C. MCLEAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE plaintiff in error brought action against the defendants in error to recover damages for personal injuries sustained when she fell upon a public sidewalk in the city of Boulder. The jury's verdict awarded the plaintiff $10,000 in damages. The trial court set the verdict aside and entered judgment in favor of the defendants. We reverse the judgment and, by reason of inadequacy of the instructions in one particular, remand for a new trial.

In 1954 the defendants purchased a lot known and designated as 1418 Walnut Street. This is in downtown Boulder across the street from the post office and near a bus stop. They leased the improvements on the lot to tenants, for whose use they constructed a driveway from Walnut Street into the lot. The sidewalk at this location extended from the front property line to the curb and was about 14 feet in width. The public sidewalk portion of the driveway consisted of a concrete slab, 15 feet in width which commenced at a curb cut and terminated 2 or 3 feet inside the front lot line. The rest of the driveway was unsurfaced. The sidewalk portion of the driveway was constructed in accordance with city speci-

fications and was not defective. The concrete slab sloped upward from the street level to the approximate sidewalk level a distance of 8 or 10 feet, and the remainder was nearly the same as the sidewalk level. At the curb, the sides of the driveway graduated from street to sidewalk level in about two feet at a grade judged from the photographs in evidence to be between 25° and 30°.

In 1961, and possibly prior thereto, the defendants had gravel placed upon the unsurfaced portion of the driveway. Traffic in the driveway caused gravel to be diffused and deposited on the slab. If the gravel were cleared from the concrete, traffic would cause it to be replaced on the concrete within three hours or less. Other driveways in this part of the city were similarly constructed with the same result of gravel on the sidewalk portions.

On the morning of July 10, 1964, the plaintiff, then 69 years of age, approached this driveway on foot while on her way to the bus stop. She was carrying a shopping bag of groceries with her right hand and a sack of groceries on her left arm. She testified that the driveway was covered with gravel and stones, which she noticed; that she "walked out around toward the street, on the outer edge, because there were less stones out there"; that, when she reached a point near the edge of the street (being near the curb and where the driveway slants at a 25° or 30° angle), she stepped on a stone, causing her to fall and sustain fractures of her wrist, foot, and toe.

The plaintiff further testified that the stones on the driveway were anywhere from the size of a quarter to a fifty cent piece; that the day was bright and clear; that her vision when wearing her glasses was good; that she was very familiar with the area; that frequently she had walked on each side of the street at this location; and that at times the other side of the street was even more hazardous. A portion of her testimony was as follows:

"Q. Mrs. Huguley, when you arrived at this driveway on July 10, 1964, what did you observe with regard to the condition of the sidewalk?

A. I noticed the stones — the gravel and stones — all over the sidewalk, but the outer side was less gravel and stones than in next to the driveway.

Q. On that particular day?

A. On that particular day.

Q. I see. Now, can you describe the gravel and stones that you referred to?

A. I would say it was all the way from small stones up to a quarter or something like that; irregular stones.

Q. Did you have your glasses on at that time?

A. Yes, I did.

Q. As you were proceeding to cross this alley, where were you looking?

A. I was looking down and then forward as I was walking.

Q. And can you describe how you crossed this driveway sidewalk portion; this portion of the sidewalk?

A. I walked along, picking my way . . ."

The defendants did not reside at these premises, and, while they placed the gravel originally on the unsurfaced portion of the driveway, it was their tenants and others who caused this gravel to become relocated on the concrete. They had made no attempt to keep the driveway clear of gravel nor to install any type of hump or other device to keep gravel from gathering there.

A tenant of the defendants testified that the photographs in evidence depicted an average amount of gravel as it existed on the driveway. The plaintiff testified that at the time of the accident "there was much more gravel and stones" than shown in the photographs.

Each side moved for a directed verdict, which motions were denied. The findings preceding the court's judgment read as follows:

"1. The evidence adduced failed to prove a prima facie case of negligence against the defendants Trolinger. The sidewalk on which the plaintiff fell was not owned by the Trolingers, but by the City of Boulder. With respect to such sidewalk, the Trolingers' duty was only to do no

affirmative act which would create a dangerous condition on the sidewalk. There was no evidence that they had committed such an act. Moreover, the condition was open and obvious and the duty of an abutting owner in this respect cannot be higher than that owed by a landowner to an invitee, namely, to give warning of hazardous conditions he has no reason to believe will be discovered by the invitee. The condition of the sidewalk did not pose an appreciable risk of harm. Finally, such condition was transitory in nature, changing from day to day and even from hour to hour. There was no evidence of actual or constructive notice to the Trolingers of the condition which existed at the time of the plaintiff's fall.

"2. The evidence conclusively proved the plaintiff to have been guilty of negligence which contributed to her injuries. She knew of the condition of the sidewalk generally. There was nothing to obstruct her view of the particular object which caused her fall. To fail to see what must have been plainly visible constitutes contributory negligence as a matter of law."

I.

■■ The evidence was sufficient to show that the defendants had notice that gravel in varying amounts existed on the driveway. While they did not place the gravel on the concrete, they dumped it on the remainder of the driveway in the first instance and allowed vehicular traffic to traverse the driveway with known result of displacement of the gravel. If at any time the amount of gravel constituted a hazardous condition, we regard *Sill v. Lewis,* 140 Colo. 436, 344 P.2d 972 as authority for the proposition that this can be the basis for liability. The duty of the defendants is as set forth in *Restatement (Second) of Torts* § 350, which reads as follows:

"A possessor of land over which there is a public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition

any structure or other artificial condition created or maintained in the highway by him or for his sole benefit subsequent to its dedication."
See Annot., 88 A.L.R.2d 331, and particularly pages 383-389; and Belcaro Co. v. Norton, 103 Colo. 485, 87 P.2d 1114.

■ The record of this case discloses that there were matters bearing upon possible negligence of the defendants which require that the question of negligence go to the jury. These matters include the size of rocks on the sidewalk, the amount of gravel there and the reasonableness of the defendants in creating the condition on their property and permitting it to remain.

## II.

■ We now approach the finding that the plaintiff was contributorily negligent as a matter of law. It was disclosed that the plaintiff wore tri-focal glasses and suffered from bi-lateral cataracts. The defendants contend that because she was an elderly woman, suffering from impaired vision and burdened with heavy packages, she was duty bound to take greater precautions than the ordinary person under the rationale of Clark v. Joslin, 128 Colo. 317, 262 P.2d 546 and Garbanati v. Durango, 30 Colo. 358, 70 P. 686. In both of these cases the physical infirmities of the plaintiffs were obvious and contributed to their respective injuries. Here, although there is evidence of visual problems, there is no evidence that the plaintiff with the aid of her glasses suffered impaired vision. In fact, she testified that her vision was good. There was no evidence of any other physical infirmity. Testimony showed she was quite an active woman. There was no evidence that the packages she was carrying contributed to her fall.

Again, a situation is presented which should have been submitted to the jury and not determined as a matter of law.
"It is insisted by counsel for the city that it thus appearing from plaintiff's testimony that he was familiar with the

defective condition of the walk, his attempt to pass over it was not consistent with reasonable prudence and the exercise of proper care on his part to avoid danger. In other words, that by using the walk, with prior knowledge of its defective condition, the act of plaintiff constituted negligence *per se*. We do not think, under all the conditions disclosed by the testimony, that it can be said, as a matter of law, that the conduct of plaintiff constituted negligence *per se*; but that, under the circumstances, it became a question for the jury to determine whether, in view of the nature of the defect, and the degree of danger to be apprehended from its existence, the ease or difficulty of avoiding it by using other portions of the street, the plaintiff exercised that degree of care and caution that an ordinarily prudent and careful person would use in the same situation." *Highlands v. Raine*, 23 Colo. 295, 47 P. 283.

If we were members of the jury we well might conclude that the defendants did not violate a duty owed the plaintiff and that the plaintiff was negligent; but what we would do as jurors we cannot do as judges.

### III.

■ The defendants assigned cross-error with respect to instructions for consideration in the event that we concluded to reverse, arguing that there should be a new trial rather than reinstatement of the jury's verdict and entry of judgment thereon. One of these assignments is that the jury was instructed as to the meaning of contributory negligence but there was nothing in these defining instructions as to the effect thereof. They would have had the court give their tendered Instruction No. 1 which contained both a definition of contributory negligence and the statement to the effect that if it existed then plaintiff's recovery would be defeated. However, Instruction No. 18 which was given contained the following:

"You are instructed that if you find from a preponderance of the evidence: (1) that the defendants were not

guilty of negligence, or (2) if defendants were guilty of negligence, the plaintiff was also guilty of negligence which caused or contributed to the cause of her accident and injuries, then, in either of the two events, you will bring in a verdict in favor of the defendants, and against the plaintiff."

We think this wording is sufficiently clear to apprise the jury of the effect of contributory negligence.

## IV.

■ The court gave the following instruction:

"INSTRUCTION NO. 11

"You are instructed that if the condition of the sidewalk in question was obvious, and if the plaintiff had observed this condition, had known of it prior to the accident, and appreciated the extent of the risk, then she assumed the risk of the condition existing there."

The defendants argued to the court and here that the jury should have been advised of the effect of assumption of the risk by the plaintiff. On the other hand, plaintiff points out that the doctrines of contributory negligence and assumption of risk overlap, and, if a jury is adequately instructed as to contributory negligence, it need not be further instructed as to assumption of risk. *See Boulder Valley Coal Co. v. Jernberg*, 118 Colo. 486, 197 P.2d 155 and *Wilson v. Hill*, 103 Colo. 409, 86 P.2d 1084.

Solely for the purpose of this case we can assume the correctness of the plaintiff's position that the jury need not have been instructed on assumption of risk. However, it does not follow that, once the court has given the jury a definition of assumption of risk, there is no need to tell it of the effect thereof. On the contrary, since the definition was set forth it was incumbent to explain the effect to be given a finding of assumption of risk. The jury well might have concluded that this instruction meant that if she assumed the risk she was not contributorily negligent. At least, the effect that this instruction might have had on the jury is speculative. Therefore, the defendants are entitled to a new trial.

The judgment is reversed and the cause remanded with direction that the cause be retried on all issues.

Mr. Chief Justice McWilliams, and Mr. Justice Lee concur.