**James P. ROSEN, Plaintiff-Appellee,**

v.

**LTV RECREATIONAL DEVELOPMENT, INC., Defendant-Appellant.**

**No. 76–1685.**

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 17, 1977.

Decided Jan. 23, 1978.

Rehearing Denied Feb. 15, 1978.

David L. Kofoed, Denver, Colo., for plaintiff-appellee.

Eugene S. Hames, of Wood, Ris & Hames, Denver, Colo., for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and ROGERS, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

This is a personal injury case which has resulted from plaintiff's colliding with a metal pole while skiing. The plaintiff-skier brought suit against the ski area, LTV Recreational Development, Inc., at Steamboat Springs, Colorado.

The primary questions, that is those which we believe require discussion, are:

* Of the District of Kansas, sitting by designation.

A. Is plaintiff precluded, as a matter of law, from recovering because of contributory negligence?

B. Was it error for the court to refuse to instruct the jury on assumption of risk?

C. Is plaintiff-appellee barred from recovery by reason of his having signed rules and regulations for season passes submitted to him by appellant ski area? Did this constitute a consent to free appellant from any and all liability, whether negligent or not negligent?

D. Was the award in the amount of $200,000 so excessive as to require that it be vacated or that there be relief by way of a remittitur?

There are other questions which we regard as less significant or important. These are for the most part trial errors such as whether the court erred in permitting the steel pole which caused the injury to be brought into court, together with its concrete base.

Was it error to give certain instructions such as one on the doctrine of being held to see the danger once it was viewed?

Was it error for the court to refuse to allow in evidence the fact that the plaintiff had been reprimanded for careless skiing on another occasion?

The basic facts are not complex and, for the most part, are not in dispute. The incident occurred on March 1, 1974, at a ski area near Steamboat Springs, Colorado. Trial was held on April 20–22, 1976. The evidence showed that the plaintiff at the time of the trial was 35 years of age, was married and had two daughters, ages 5 and 2. Plaintiff and his family had lived in Steamboat Springs, Colorado for about three years, and he was employed in the real estate business, but in slack seasons he was also employed in the construction business or in other manual labor.

The specific area in which the collision happened was a more or less flat area where the so-called Christie Lift terminated and intersected a run from a higher level known as Heavenly Daze. At this intersection plaintiff-appellee came into contact with one Haffelder, who had just alighted from the chairlift serving the Christie area. The path off the lift terminated onto a rise at the far end of the open area. Haffelder was proceeding toward plaintiff relatively slowly. The evidence showed that plaintiff did not slacken his speed as he approached Haffelder, who was between plaintiff and the pole. The direction which Haffelder turned was to the left, plaintiff's right, whereas plaintiff expected him to turn to his, Haffelder's, right and plaintiff's left. According to plaintiff, this unexpected change of direction on the part of Haffelder made it impossible for him (Rosen) to avoid Haffelder. In an attempt to reduce the seriousness of the impact, he tried to grab hold of Haffelder and thus avoid knocking him over. Haffelder, however, avoided the grab and the result was that Rosen and Haffelder collided and Rosen was catapulted into a metal pole which was located in an open area. It was this pole that caused the serious injuries to the plaintiff, including multiple fractures of the large bone (tibia) in his leg. From this he has permanent injuries. The jury awarded damages in the sum of $200,000.

It is alleged that appellant's negligence consisted of maintaining this steel pole set in concrete at the place where it was. It is contended that this created a risk of injury of the very kind that occurred. Defendant maintains, however, that it was not a hazard because descending skiers could generally avoid it by simply turning.

## I.

DOES THE FACT THAT APPELLEE COLLIDED WITH A THIRD PERSON BEFORE COLLIDING WITH APPELLANT'S STEEL POLE SERVE TO RENDER APPELLANT'S NEGLIGENCE, IF ANY, A REMOTE FACTOR, WHEREBY IT CANNOT BE HELD LIABLE?

Complaint is made that the so-called "second impact theory" was submitted to the jury. This is based upon a contention and argument that the presence of the pole

is not sufficient notice to the operator of the ski area to render him liable for an accident which was unlikely since it resulted from a collision with the pole only after a collision with a skier; that because of this sequence there could not be a violation of the duty to maintain a ski area in a reasonably safe condition.

Counsel for defendant-appellant characterizes his contention as the "second impact theory." He states that this is the "only theory upon which plaintiff could possibly recover;" that it has not been adopted in Colorado; and that it is not likely to be. We must disagree with appellant's classification for the readily apparent reason that it is so much like a straw man approach. Counsel creates the straw man and then knocks it down. A more likely problem-solving method is that of legal causation. This requires consideration as to whether the conduct of the defendant-appellant created a risk for which it is legally responsible to plaintiff or, specifically, whether the collision of plaintiff with Mr. Haffelder constituted an intervening legal cause which superseded any cause attributable to appellee. This is the way that the trial court considered the case, and we agree with its analysis. To go forward on the "second impact theory" is to use a narrow category which does not give any promise of a correct result.

■ The steel signpost constituted a passive condition rather than an active force, but this factor is not significant. Negligently maintaining a *condition* can constitute negligence as readily as active conduct. Professor Prosser in his work on Torts (4th Ed.), at p. 18, states that although in the past such a distinction had some recognition, it no longer has acceptance.

The foreseeability test adopted by the trial court for determining whether the appellant was liable is set forth in its charge to the jury as follows:

The occupant of the premises has a duty to use reasonable care to maintain his premises in a reasonably safe condition in view of the probability or foreseeability if any of injury to others, and in determining whether or not the defendant LTV Recreational Development, Inc. as an occupant of the premises acted as a reasonably prudent person in maintaining the premises in a reasonably safe condition considering the probability or foreseeability if any of injury to others, you should consider, but you are not limited to the following: One, the purpose for which the plaintiff James Rosen was on the premises; two, whether the defendant reasonably could have foreseen that persons such as the plaintiff would or might come upon the premises for the same or similar purpose; three, whether there was a condition on the premises which created an unreasonable risk of injury to persons such as the plaintiff and which they could not reasonably be expected to discover for themselves; now, if there was such condition, did the defendant know or should the defendant reasonably have known of its existence; finally, if there was such a condition which the defendant knew or reasonably should have known of, did the defendant use reasonable care or give warning of it?

The foregoing instruction requires that plaintiff prove that the steel signpost was an independent hazard capable of producing liability regardless of a collision between skiers and the resultant impact with the post. The burden thus imposed on plaintiff was to prove that the condition created by defendant-appellant was reasonably capable of producing an injury to the plaintiff.

We have considered the two authorities relied on by appellant, *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir.), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966),[1] and *Frericks v. General Motors Corp.*, 20 Md.App. 518, 317 A.2d 494 (1974), *vacated and remanded*, 274 Md. 288, 336 A.2d 118 (1975), which were both decided in the context of "second impact." Both denied recovery on the basis that automobile

---

1. The Seventh Circuit has recently reconsidered *Evans* and has overruled it in *Huff v.*

*White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977).

manufacturers are not under a duty to design automobiles so as to protect occupants from serious injuries resulting from collisions. The facts differ substantially from the facts at bar and render it difficult, if not impossible, to relate them to this case by drawing parallels from them.

■ We perceive no error in the rejection by the trial court of the theory advanced by appellant and in defining the case on the more fundamental basis of foreseeability that injury would result from having the steel pole in the midst of the intersection.

## II.

### DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY ON THE DOCTRINE OF ASSUMPTION OF RISK?

■ In rejecting the request of counsel for appellant for an instruction to the jury on voluntary assumption of risk, the court stated its opinion that assumption of risk is no longer applicable in Colorado in view of the comparative negligence statute.

The Supreme Court of Colorado has, even prior to the adoption of the comparative negligence statute, treated assumption of risk as a species of contributory negligence. *See Boulder Valley Coal Co. v. Jernberg*, 118 Colo. 486, 197 P.2d 155 (1948); *Wilson v. Hill*, 103 Colo. 409, 86 P.2d 1084 (1939); *Carpenters Local 55 v. Salter*, 114 Colo. 513, 167 P.2d 954 (1946). It follows that where they do not expound independent defenses, it is repetitious to submit both to the jury. The Colorado Court of Appeals considered the associated question whether the two defenses relate in the same manner to the doctrine of comparative negligence in one of its recent decisions, *Brown v. Krueser*,

560 P.2d 105, 108 (Colo.App.1977). It ruled that in a case in which assumption of risk is applicable it does not constitute a complete bar to a recovery but, rather, is to be treated as reducing recovery in the same way as contributory negligence.[2]

The court also said that in view of the Supreme Court's recognition of the close similarity of assumption of risk and contributory negligence, instructions as to both doctrines are overlapping and unnecessary. Therefore, when comparative negligence determines percentages of negligence and of contributory negligence, it sufficiently considers the effect of assumption of risk and avoids the confusion which would result from giving both definitions to the jury. Cited were *Eisenhart v. Loveland Skiing Corp.*, 33 Colo.App. 120, 517 P.2d 466 (1973); *Huguley v. Trolinger*, 169 Colo. 1, 452 P.2d 1006 (1969); *Bennett v. Gitzen*, 29 Colo.App. 271, 484 P.2d 811 (1971). To the same effect is the Court of Appeals decision in *Stefanich v. Martinez*, 570 P.2d 554 (Colo. App.1977) (*cert. granted* Oct. 24, 1977).

Counsel's argument that it was error not to instruct on assumption of risk is necessarily advanced on the premise that it would operate as a bar to recovery. Since, however, it no longer has the effect of barring the action, it has lost its usefulness.

For the reasons stated, then, appellant's position cannot be maintained.

■ Finally, we do not view the fact situation in the instant case as one which lends itself to assumption of risk since there was no antecedent knowledge of the risk and no opportunity to voluntarily assume it. The particular hazard did not arise until Haffelder made the unexpected turn.

The trial court correctly instructed on comparative negligence and was correct in

---

2. The Court of Appeals said:

Several Colorado cases have classified assumption of risk as a form of contributory negligence. *See Maloney v. Jussel*, 125 Colo. 125, 241 P.2d 862; *Boulder Valley Coal Co. v. Jernberg*, 118 Colo. 486, 197 P.2d 155, *United Brotherhood v. Salter*, 114 Colo. 513, 167 P.2d 954; *Wilson v. Hill*, 103 Colo. 409, 86 P.2d 1084. As a result of the view expressed in these cases, we hold that the doctrine of assumption of risk should be treated under comparative negligence in the same manner as other negligent conduct by a plaintiff. Hence, in actions tried under comparative negligence principles, the fact that a plaintiff knowingly and voluntarily encountered a risk is a factor for the jury to consider in apportioning the respective negligence of the parties, but should not necessarily act as a complete bar to a plaintiff's recovery.

its conclusion that assumption of risk should not be submitted.

## III.

WHETHER PLAINTIFF WAS BARRED FROM RECOVERY BY THE STIPULATION CONTAINED IN EXHIBIT E, RULES AND REGULATIONS FOR SEASON PASSES, WHICH SET FORTH AN ACKNOWLEDGMENT THAT SKIING WAS A HAZARDOUS SPORT AND THAT HAZARDOUS OBSTRUCTIONS EXISTED IN ANY SKI AREA

These rules and regulations also acknowledged the existence of hazardous obstructions in ski areas and accepted "the existence of such dangers, and that injuries may result from the numerous falls and collisions which are common in the sport of skiing." There followed a specific waiver of injury from carelessness or negligence of fellow skiers.

Important in the interpretation of the regulations is the fact that the season pass is not gratuitous. It is purchased, and the only difference between it and a daily ticket is that the pass is sold for a large sum of money. It permits the owner to ski during the entire season whenever he or she wishes.

■ Parties can enter into an agreement, the result of which is that the purchaser consents that the seller shall be free of liability for the consequence of conduct which would otherwise be negligent. *See* Prosser on Torts (4th Ed.), p. 442. Usually such stipulations are not enforced in instances in which the seller is engaged in a business which has a public interest. *See* Prosser, *supra*. Courts scrutinize these agreements carefully because of their one-sidedness. Such contracts are generally written by the obligee to exonerate him from liability. The obligor merely signs the stipulations and does so without considering the terms contained in the document.

■ The kind of agreement we have here is of this character and differs from the contract which results from negotiations on both sides. Here the rules and regulations, Exhibit E, was drafted by the ski area so as to exclude liability. Because of its one-sidedness, it is to be interpreted strictly in considering the rights of the party who has prepared it. *See* 3 Corbin on Contracts § 559, at pp. 270–71, and *see* footnote 30. The trial court reasoned in much the same way. It said:

> As it relates to the plaintiff James Rosen, I think there is a material issue of fact for the factfinder to determine. The mere fact that he signed the slip in which he admitted that skiing was hazardous and there may be collisions and so forth doesn't necessarily relieve the defendant in this case of negligence. They operated a public recreational area. They charge admission and they just can't—the law isn't that such an operator can just foreclose any liability whatsoever.

> Now, maybe you would be entitled or defendant would be entitled to an instruction on the assumption of risk and the regulations as they are called, the general rules rather, they are in evidence. You can argue them, but as a matter of law I cannot say that they relieve the defendant of liability in this case.

The trial court was referring to the ambiguous language in the stipulation, which is set forth in the rules and regulations for season passes. It reads:

> I understand that skiing is a hazardous sport and that hazardous obstructions, some marked and some unmarked, exist on any ski area. I accept the existence of such dangers and that injuries may result from the numerous falls and collisions which are common in the sport of skiing, including the chance of injury resulting from the negligence and carelessness on the part of fellow skiers.

■ We agree with the trial court that it does not contain any express consent on the part of the signer to exonerate the ski area for negligent conditions. It is true that it exonerates the ski area for injuries resulting from the negligence and carelessness of fellow skiers, but it does not promise to

waive injuries resulting from the negligence of the ski area. Acknowledgment of the existence of such hazard, and even acceptance of such dangers, falls short of saying that the ski area may be negligent toward the signer free of liability.

We conclude that the agreement is ambiguous and that it does not expressly provide for the waiver which is asserted. In view of the fact that this is an adhesion contract like those discussed in *Corbin, supra,* we are not at liberty to imply provisions not expressed.

### IV.

WHETHER APPELLANT IS ENTITLED TO RELIEF, EITHER A NEW TRIAL OR REMITTITUR, ON THE BASIS THAT THE JURY VERDICT WAS EXCESSIVE AS A MATTER OF LAW

Plaintiff's injuries were serious. He suffered severe fractures, first an open, comminuted, proximal tibial shaft fracture; secondly, an open fracture of the fibular neck; and thirdly, a mid-shaft fibular fracture of the left leg. Thus, there was a fracture of the tibia, the fibular neck and the mid-shaft of the fibula. Several surgical procedures have been carried out at the Routt County Memorial Hospital and later at the Swedish Hospital in Denver. The latter followed flight by helicopter from Steamboat Springs. He was in a full-length cast for some 11 months. During this period he was unable to perform any work. He continued on crutches for some time after the removal of the cast.

The special damages as of the time of trial amounted to $21,000. Evidence showed that he suffered a great deal of pain as well. There is permanent disability consisting of loss of motion at the knee, a shortened leg, and a permanent limp, plus permanent scars. Also, he has a permanent arthritic condition. He is restricted in many areas, not only at work but in athletic endeavors. We are also told that the pain continues.

The fixing of damages is peculiarly the function of the jury, or of the trial judge if there has been no jury. The appellate court is at a disadvantage in considering whether an award is excessive because the standards are vague, requiring as they do that the verdict be the product of passion, prejudice or improper motive. The fact that it might strike us that the award of $200,000 is high is not sufficient. To find that it was the product of passion or prejudice on the part of the jury, it has to be manifest that the amount awarded was grossly excessive. We are unable to say in this instance that it was. *Cf. Wells v. Colorado College,* 478 F.2d 158 (10th Cir. 1973), *Davis v. Fortino & Jackson Chevrolet Co.,* 32 Colo.App. 222, 510 P.2d 1376 (1973), *Cisneros v. Laurita,* 534 P.2d 801 (Colo.App. 1975).

### V.

WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE EVIDENCE

We have heretofore concluded that the evidence was sufficiently substantial to justify submission of the question of negligence of the appellant to the jury. The location of the steel pole, which was capable of causing serious injury, in the middle of the intersection, the fact that no effort was made to pad it, and that no warning was given of its potential danger, are the important factors. Our opinion is that the condition was one which a jury could conclude constituted negligence.

We must disagree also with appellant's contention that plaintiff-appellee was guilty of contributory negligence as a matter of law. The fact that the accident happened does not establish this nor does the fact that he was moving with some degree of speed. *Cf. LaVine v. Clear Creek Skiing Corp.,* 557 F.2d 730 (10th Cir. 1977). The question of negligence and contributory negligence are generally, except in the clearest of cases, jury questions. In our opinion this case is no exception to that

rule. The court was correct in denying the motions.

\* \* \* \* \* \*

We find no reversible error in the several other points advanced by appellant, the alleged trial errors involving instructions and rulings on evidence.

It follows that the judgment of the district court should be and the same is hereby affirmed.