**William R. NYE, Plaintiff,**

v.

**Edward J. FENTON, Defendant.**

**No. 78–1168.**

United States District Court,
D. Kansas.

Aug. 5, 1980.

Lee Turner, Turner & Boisseau, Great Bend, Kan., for plaintiff.

Thomas J. Berscheidt, Ward & Berscheidt, Great Bend, Kan., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is a personal injury suit which came before the Court for trial by jury which returned a verdict in favor of the plaintiff, William R. Nye, and against the defendant, Edward J. Fenton, in the sum of $1,173,-000.00. Defendant seeks a new trial arguing that the damages are excessive and the result of passion or prejudice on the part of the jury, and that the Court erred in prohibiting the defendant's testimony.

Plaintiff's complaint arose out of an automobile-motorcycle accident involving the parties on July 3, 1976, at Colby, Kansas, and wherein plaintiff sustained certain injuries. On June 16, 1980, Judge Wesley E. Brown granted the plaintiff judgment on the issue of liability based on a recent companion case in Thomas County, Kansas, in which a jury determined Edward J. Fenton was ninety-five percent (95%) causally negligent in the accident causing William R. Nye's damages. The matter between the plaintiff and defendant herein was then tried before a jury solely on the issue of the damages sustained by the plaintiff. The plaintiff's claim was for $1,385,623.50. The following resume of plaintiff's evidence is uncontroverted.

The plaintiff sustained orthopedic injuries principally to the right leg, ankle and foot as evidenced by hospital records. The ankle was literally destroyed insofar as its function was concerned and the foot, by reason of fusion, was turned outward at an approximate twenty-five degree (25°) angle. Plaintiff's leg is shortened approximately 2¾ inches. Considerable atrophy has transpired, in part due to the fractures, infection and surgery. His hip, knee and back are affected, all of which was obvious

and demonstrated to the jury. Pain and suffering, an element of the damages, are apparent from the instant of impact through a series of hospitalizations and are continuous today. Some evidence was offered with regard to mental suffering by virtue of emotional problems and the plaintiff's frustrations due to the crippling nature of the injury. The injury has left the plaintiff a disabled person in that his bodily function is impaired approximately sixty-five percent (65%), noted principally in his labor and at home. His disability is permanent in nature and will persist in degeneration. Evidence was offered that "no matter how much the plaintiff tries, he is so badly damaged that eventually he will require amputation". This is a reasonable prognosis.

At the time of the accident, the plaintiff was gainfully employed, earning approximately $16,000 to $20,000 per year with expectations of advancement with his company. His work expectancy was approximately forty years, and he is presently employed with the same company, earning approximately $10,000 per year with no expectations of advancement.

In light of the foregoing resume, all of which the Court perceived from the evidence adduced by the plaintiff, it is concluded that he was horribly injured orthopedically, the plaintiff was consequently affected as a whole, and a substantial verdict was anticipated. It should be noted throughout the course of this case, defendant offered no evidence to rebut the plaintiff's claim for damages nor attempted to mitigate those damages save an improper technique on which comment will follow. The paramount question before the Court, therefore, is to ascertain if these damages, as evidenced by the jury verdict, while substantial, are excessive to the extent that it shocks my conscience. The Court concludes that it does not, nor should the jury verdict be disturbed.

■ In considering the defendant's motion for a new trial on the basis of an excessive verdict, I obviously note the substantiality of the verdict and conclude that it may indeed exceed the expectations of the defense counsel. Indeed, other verdicts of which the Court is aware and which were alluded to by defense counsel in his oral argument, do not suffice a basis for denial of the jury's prerogative. This case was fully and fairly tried. The plaintiff's claim was no mystery to the jury, the defense or this Court. Every element for which damages may be considered was corroborated by substantial evidence. The jury, under the evidence, had every right to return the verdict in the amount indicated. This Court has no intention of challenging that prerogative. In this, the Court is mindful of considerable authority for upholding a jury's verdict notwithstanding its substance or size.

The general rule in Kansas regarding excessive jury verdicts was recently set forth by the Kansas Supreme Court:

Where a charge of excessive verdict is based on passion or prejudice of the jury, but is supported solely by the size of the verdict the trial court will not be reversed for not ordering a new trial and no remittitur will be ordered unless the amount of the verdict in light of the evidence shocks the conscience of the appellate court.

*Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 686, 602 P.2d 1326, 1331 (1979). See *Henderson v. Hassur*, 225 Kan. 678, 594 P.2d 650 (1979), *Kirk v. Beachner Construction Co., Inc.*, 214 Kan. 733, 522 P.2d 176 (1974).

■ The Kansas Supreme Court has also stated that setting aside a jury verdict as excessive is problematic due to the subjective nature of damages in a personal injury case. For this reason the responsibility for determining damages is assigned to the judgment of jurors:

. . . [T]here is of course no uniformity in our decisions on the proposition of when damages allowed in a personal injury action are excessive for the simple reason determination of the question necessarily depends upon the facts and circumstances of each particular case as it is presented for review. . . . No verdict is right which more than compensates—and none is right which fails to compensate. . . . Pain and suffering have no known dimensions, mathe-

matical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence.

*Domann v. Pence,* 183 Kan. 135, 151, 325 P.2d 321, 325 (1958). See *Rediker v. Chicago, Rock Island and Pacific R. R.,* 1 Kan. App.2d 581, 571 P.2d 70 (1977). For the above reasons this Court is very reluctant to set aside the verdict of a jury without some showing of specific facts and circumstances inferring passion, prejudice or bias on the part of the jury.

The general rule cited by the Tenth Circuit Court of Appeals on the question of excessive verdicts is that in order to find a verdict to be caused by the passion or prejudice of a jury, it must obviously be grossly excessive. *Rosen v. LTV Recreational Development, Inc.,* 569 F.2d 1117, 1123 (10th Cir. 1978). The Court of Appeals in this case also noted the determination of damages is the function of juries, unless a jury has been waived, and that determining whether a verdict is excessive is difficult because the standards of review are vague. *Rosen, id.*

■ The defendant has failed to affirmatively show in his motion, memorandum and oral argument for a new trial specific facts and circumstances inferring the jury was influenced by passion, prejudice or bias. See *White Motor Corp. v. Stewart,* 465 F.2d 1085 (10th Cir. 1972); *Chicago, Rock Island & Pacific R.R. v. Kifer,* 216 F.2d 753 (10th Cir. 1954). The basis of the defendant's motion rests solely on the amount of the verdict. To set the verdict aside it must shock the conscience of the Court. As stated above, under the facts and circumstances of this case, it does not do so. Therefore, this part of the defendant's motion for a new trial is denied.

Turning to the second argument for a new trial, some judicial comment is appropriate regarding what transpired in the course of trial and the Court's response thereto. The Court recalls defense counsel's remarks in opening statement to the effect that even though liability was not in issue, he would call the defendant to permit the jury its own appraisal of this gentleman. At some point, informally during in-chambers conference, the Court cautioned defense counsel that such an effort would be considered irrelevant and probably prejudicial. The Court recalls that defense counsel concurred but notwithstanding, at the appropriate moment, called Mr. Fenton. At that time, I called counsel to the side bar and the following transpired:

THE COURT: Defendant ready?

MR. BERSCHEIDT: Yes, Your Honor. We have just a very, very brief testimony is all.

THE COURT: Could you both come forward, please?

(Whereupon, counsel approached the bench, and the following bench conference was had outside the hearing of the jury, to-wit:)

THE COURT: I asked for a brief conference in that early this morning in our office conference and your opening statement, you indicated you were calling the defendant, words to the effect, so the jury can kind of see where he is or something.

MR. BERSCHEIDT: I think, under the circumstances, and in all candor, I have no intention of asking Mr. Nye anything about his financial ability.

THE COURT: Talking about Mr. Fenton.

MR. BERSCHEIDT: Mr. Fenton, of course. Excuse me. I do feel that at least I can call him. He was at the scene of the accident and did help administer a tourniquet on the man's leg, whatever that's worth. Obviously, the jury has a right to at least hear his voice and listen to him for a brief period of time. He's the one that's going to ultimately be on the hot seat one way or the other.

MR. TURNER: Only problem with this tourniquet business is that he had twelve beers, was drunk.

THE COURT: Let me say first, I appreciate you are entitled to demonstrate the full moral force of your case—either of you—but I just called here for this conference because it struck me that we may be getting into something that would open the door on ability to respond financially or inability to respond financially, neither of which is relevant to the issues of this case. And I am afraid, Mr. Berscheidt, I may not only sustain objections in that line but perhaps explain to the jury my reasons. I just want to forewarn you. If you are going to want him to say he was a nice guy, he got out and put a tourniquet on, that's irrelevant to the issues as well.

MR. BERSCHEIDT: Let me handle it this way: At this time I would proffer the testimony in the form of direct testimony in the form of Mr. Fenton, the Defendant, would show the jury he's married, he lives in Irving, Texas; he has a wife, a child; that he was involved in an accident; that he did observe Mr. Nye in his injured condition on the pavement, and that's it.

THE COURT: That would be the substance of it?

MR. BERSCHEIDT: That would be the substance of it.

THE COURT: The statements you are making here would be, in effect, what he would testify if he were called to testify?

MR. BERSCHEIDT: Those would be the only questions I will ask him.

THE COURT: I'm going to—do you have an objection to it?

MR. TURNER: Yes, I do, Your Honor. I object to it as not being relevant to the issues.

THE COURT: Sustained.

MR. TURNER: If he were allowed to testify, I would ask leave to show the Court that he had had twelve beers, was drunk at the time.

THE COURT: I'm not going to get into that. I just wanted to say, Mr. Berscheidt, it strikes me that could well open other areas that would be subject to mistrial or prejudice to both parties. I'm going to say to you, I'm don't believe its probative value is worth running that risk, and strikes me as entirely irrelevant to this issue.

MR. BERSCHEIDT: I understand you sustained in essence the objection to that proffered testimony. So, with the record preserved, there is no sense attempting to go any further with that.

THE COURT: Then you rest?

MR. BERSCHEIDT: Yes sir.

It strikes me that the Court's reasoning at the time of trial was entirely correct. My obligation is to allow the parties a full and fair trial but, in addition, to avoid incidents of prejudice. Fed.R.Evid. 403. *See,* 75 Am.Jur.2d Trial § 127 at 222–23 (1974).

■ If the defense counsel called Mr. Fenton to testify consistent with his proffer to permit the jury some appraisal of him, the plaintiff's objection as to relevance would have been sustained. In that event, the defendant would have gained improperly what he could not properly do under the Federal Rules of Evidence. The purpose of this trial technique was obvious to the Court but more than that, had plaintiff's counsel elected not to object and permitted defendant to testify, however irrelevant, was he not entitled to test the witness's financial ability and/or responsibility? Regardless of what plaintiff's counsel might have done, it was obvious to the Court that such a move would be apparent and I would then be faced with defense counsel's motion for a mistrial. It is my judgment that my rulings at the time of proffer were entirely correct and timely. A trial Court in its discretion can properly exclude evidence if its probative value is outweighed by its potential for prejudicing the jury. *See, United States for and on Behalf of Cannon Air Corp. v. National Homes Const. Co.,* 581 F.2d 157 (8th Cir. 1978); *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561 (10th Cir. 1978).

It should be noted that in the course of final argument, notwithstanding the Court's ruling, defense counsel persisted again in suggesting the inability of his client to respond financially. Since this was as improper as his attempt to call the defendant, an objection was again sustained. For whatever it is worth, defense counsel ultimately succeeded in bringing to the jury's attention whatever he had in mind in calling this witness at the outset. In the Court's judgment, this tactic was improper, misleading and irrelevant and, accordingly, will not be seriously entertained as a basis for defendant's motion for new trial. This Court, having heard all the evidence, perceived each of the witnesses, having empaneled and observed the jury throughout the course of these proceedings, and while aware that the verdict is a substantial one, does not find it excessive to the extent that my conscience is shocked.

The defendant's motion for a new trial is overruled and the jury's verdict is approved. Judgment shall be entered in the amount of $1,114,350.00 which is ninety-five percent (95%) of the $1,173,000.00 verdict plus interest as provided by K.S.A. 16- 204(b) (1980).

IT IS SO ORDERED.