**Esther ZOLLMAN, Plaintiff,**

v.

**Ken W. MYERS, doing business as High Country Snowmobile Tours and Recreation Rentals, and Christopher Smith, an individual, Defendants.**

**Civ. No. 91–C–131A.**

United States District Court, D. Utah.

Aug. 24, 1992.

---

Jeffrey D. Eisenberg, Wilcox, Dewsnup & King, Salt Lake City, Utah, for plaintiff.

Glen T. Hale, Dunn & Dunn, Salt Lake City, Utah, for defendant High Country.

Darwin C. Hansen, Morgan & Hansen, Salt Lake City, Utah, for defendant Smith.

ORDER DENYING HIGH COUNTRY'S MOTION FOR SUMMARY JUDGMENT AND ZOLLMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

This matter came before the court on High Country Snowmobile's motion for summary judgment and Esther Zollman's motion for partial summary judgment. The court heard oral argument on August 17, 1992, and took the matters under advisement. Jeffrey D. Eisenberg of Wilcox, Dewnsup & King, Salt Lake City, Utah, represented Zollman. Glen T. Hale of Dunn & Dunn, Salt Lake City, Utah, represented High Country. Darwin C. Hansen of Morgan & Hansen, Salt Lake City, Utah, represented Smith. The court, having reviewed the record and the applicable law, denies both High Country's motion for summary judgment and Zollman's motion for partial summary judgment.

## I. BACKGROUND

On January 23, 1991, Zollman suffered injuries when the snowmobile she was operating collided with a snowmobile operated by Smith. The collision occurred at High Country's snowmobile recreation park while Zollman and Smith operated snowmobiles rented from High Country. High Country operates its snowmobile recreation park to provide instruction in snowmobile operation and to give guided tours to its customers. High Country requires that each of its customers execute a release agreement which details some of the risks of snowmobiling and which seeks to exculpate High Country from liability for injuries resulting from its services, including those injuries resulting from High Country's negligence. Both Smith and Zollman executed these release agreements with High Country.

On the date of the accident, Zollman proceeded to the designated riding area under the direction of a guide provided by High Country. As Zollman approached the crest of a hill, the guide instructed Zollman to stop because another snowmobile was in the area but was out of view over the crest of the hill. After a ten minute wait, the guide directed Zollman to proceed over the hill. Zollman collided with Smith as she reached the crest. Zollman suffered numerous injuries, including facial injuries which she alleges are permanently disfiguring.

On December 31, 1991, Zollman filed this suit alleging that High Country and Smith were negligent. Smith cross-claimed against High Country. High Country now moves for summary judgment, contending that the release agreements [1] between Smith and High Country and between Zollman and High Country constitute an express assumption of the risk and relieve High Country from liability. Zollman counters with her own motion for summary judgment in which she argues that the release agreement is unenforceable as a matter of law.

## II. DISCUSSION

*A. Summary Judgment*—Rule 56 of the Federal Rules of Civil Procedure "permits entry of summary judgment on a claim when there is no genuine issue of material fact outstanding." *City Consumer Serv. Inc. v. Horne*, 578 F.Supp. 283, 288 (D.Utah 1984) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Id.* (citing *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir. 1980)). If the movant carries its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In making this showing, Rule 56(e) "requires the nonmoving party to ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

In assessing the sufficiency of the non-movant's showing, the trial judge "must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made." *Horne*, 578 F.Supp. at 288 (citations omitted). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted." *Horne*, 578 F.Supp. at 288 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Accordingly, if doubt arises regarding any issue, the court must resolve the doubt in favor of the nonmovant and deny the motion.

When the issue presented on a motion for summary judgment is a matter of contract interpretation, the court must determine whether the contract is ambiguous. "[T]he interpretation of a clear and unambiguous written agreement ... is one of law for the court and may be decided upon a motion for summary judgment." *Hauser v. Western Group Nurseries, Inc.*, 767 F.Supp. 475, 484 (S.D.N.Y.1991) (citations omitted). However, "[s]ummary judgment is normally inappropriate when a contract term is ambiguous because a triable issue of fact usually exists as to its interpretation." *Id.* (citations omitted). "Thus, if there is conflicting evidence regarding the parties' intent, the district Court may only identify the issues at the summary judgment stage, not resolve them." *Id.* (citation omitted).

*B. High Country's Motion for Summary Judgment*—High Country supports its motion with the following arguments: (1) that Utah law requires the enforceability of recreational liability release agree-

---

1. The last paragraph of clause 3 of the release agreements is printed in bold letters and capitalized. It reads as follows:

**IN SIGNING THIS DOCUMENT, I FULLY RECOGNIZE THAT IF ANYONE IS HURT OR PROPERTY IS DAMAGED WHILE I AM ENGAGED IN THIS EVENT, I WILL HAVE NO RIGHT TO MAKE A CLAIM OR FILE A LAWSUIT AGAINST HIGH COUNTRY, OR ITS OFFICERS, AGENTS, OR EMPLOYEES, EVEN IF THEY OR ANY OF THEM NEGLIGENTLY CAUSED THE BODILY INJURY OR PROPERTY DAMAGE.**

**926**

ments;[2] (2) that the release agreements do not violate public policy;[3] (3) that Zollman and Smith knowingly and intelligently executed the release agreements; and (4) that the allegedly negligent acts were within the scope of the risks set out in the release agreements.

Zollman, joined by Smith, argues that release agreements are not favored in Utah law;[4] that the release agreements are unenforceable due to failure of consideration;[5] that they did not expressly assume the risk of injury; that provisions of the release agreements are ambiguous and inconsistent; that the release agreements are overbroad and vague;[6] that the release agreement violates public policy;[7] and that summary judgment is premature because the parties have conducted only limited discovery.

■ "Parties can enter into an agreement, the result of which is that the purchaser consents that the seller shall be free of liability for the consequence of conduct which would otherwise be negligent." *Rosen v. LTV Recreational Dev., Inc.*, 569 F.2d 1117, 1122 (10th Cir.1978) (citation omitted). "Usually such stipulations are not enforced in instances in which the seller is engaged in a business which has a public interest." *Id.* (citation omitted). Further, because of the one-sidedness of release agreements, the court will strictly construe the agreement against the drafter. *Id.* "[O]ne principle that permeates all of the cases which [the court] has examined is that a release, to be enforceable, must at a minimum be unambiguous, explicit, and unequivocal." *Simonson v. Travis*, 728 P.2d 999, 1002 (Utah 1986) (citations omitted). Therefore, if the agreement is ambiguous, the ambiguity will be resolved against High Country, *Rosen*, 569 F.2d at 1122, and consequently, High Country's motion for summary judgment will be denied.

■ Arguing the public interest exception, Zollman contends that the release agreement is void because High Country was involved in a business activity involving the public interest. She directs the court to the Off–Highway Vehicle Act ("Act") of the Utah Code. *See* Utah Code Ann. 41–22–1 to –33 (1988). In the Act, the Utah legislature declared that

2. High Country cites numerous cases from other jurisdictions in which exculpatory clauses used in release agreements in similar recreational activities were upheld. All parties acknowledge that Utah has no reported case involving a release agreement for a recreational activity.

3. Hereinafter, the court will use the terms public interest and public policy interchangeably.

4. *See Union Pac. R.R. Co. v. El Paso. Natural Gas Co.*, 17 Utah 2d 255, 408 P.2d 910 (1965).

5. Without further discussion, the court finds that the release agreements were supported by adequate consideration. Consequently, the court rejects Zollman and Smith's argument that the release agreement was not supported by adequate consideration.

6. Clause 5 of the release agreement is relevant to Zollman's and to Smith's arguments that they did not expressly assume the risk, that provisions of the release agreement are ambiguous and inconsistent, and that the release agreement is overbroad and vague. Clause 5 reads as follows:
   I understand and acknowledge that I will be given proper and adequate training and in-

struction to operate a snowmobile; and, that if I encounter a situation or problem which was not covered by the training or instruction provided by HIGH COUNTRY, I hereby agree to stop my snowmobile and wait for proper instructions. Otherwise, I expressly agree to assume the risk presented by the situation or problem.
   Zollman and Smith argue that clause 5 covers the present facts rather than clause 3 which was previously quoted. Under their interpretation of the agreement, they did not assume the risk because they collided after Zollman had stopped and had been instructed to proceed by High Country's instructors. Further, Zollman and Smith argue that clause 5 is inconsistent with clause 3 and that this inconsistency must be interpreted against High Country.

7. This public policy is codified in Utah Code Ann. § 41–22–1 (1991), which reads as follows:
   It is the policy of this state to promote safety and protection for persons, property, and the environment connected with the use, operation, and equipment of off-highway vehicles, to promote uniformity of law, to adopt and pursue a safety education program, and to develop trails and other facilities for the use of these vehicles.

[i]t is the policy of this state to promote safety and protection for persons, property and the environment connected with the use, operation, and equipment of off-highway vehicles.

Zollman argues that because High Country's business involves off-highway vehicle training, ostensibly a public interest, then High Country cannot contract away its liability.

" '[P]ublic policy' is a vague and elastic term in need of limitation so as not to provide an arguable basis for [every] lawsuit." *Hodges v. Gibson Prod. Co.*, 811 P.2d 151, 165 (Utah 1991). The Utah Supreme Court has defined public policy as "that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1043 (Utah 1989) (quoting *Townsend v. L.W.M. Management, Inc.*, 64 Md.App. 55, 494 A.2d 239, 243 (1985)). "Public policy is most obviously ... embodied in legislative enactments. *Id.*

Although no reported Utah cases have interpreted the Act, the court finds instructive a Utah case applying the public policy exception. *See Lyman v. Taylor*, 14 Utah 2d 362, 384 P.2d 401, 402 (1963). In *Lyman*, the Utah Supreme Court upheld the trial court's avoidance of a release contract between an unlicensed contractor and a homebuyer. *Id.* In avoiding the contract, the court relied on the statutory policy that contracts made by unlicensed contractors were unenforceable. *Id.*

Because snowmobile safety, as implemented through training and education, is a policy of the state, and because High Country operates a business involving snowmobile education, Zollman argues that High Country cannot seek to limit its liability. Two facts, however, persuade the court that the link between the Act and High Country's business activities is too attenuated to render the release agreement unenforceable under the public policy exception. First, the Act deals almost exclusively with the registration of and the restrictions on the operation of off-highway vehicles, such as snowmobiles. The Act deals little with instruction in snowmobile training and in no place suggests that parties providing such training cannot seek to limit their liability. The court will not strain to find such a reading of the release agreement. Second, elsewhere in the Utah Code, the legislature has expressly limited the liability of landowners who, without charging admission, make their land available to others for recreational purposes. *See* Utah Code Ann. § 57–14–1 to –7 (1988). This provision does not limit liability for those who charge admission to others for the recreational use of property under their control. *Id.* at § 57–14–6. Nevertheless, the legislature did not preclude such landowners from seeking to limit liability. Based on the foregoing provisions of Utah law, the court concludes that it is not the public policy of the state of Utah to prohibit a business such as High Country from seeking to limit its liability.

■ The court next must determine whether the exculpatory provision is ambiguous, and therefore, unenforceable. " 'Whether an ambiguity exists in a contract is a question of law.' " *Palmer v. Davis*, 808 P.2d 128, 132 (Utah Ct.App. 1991) (quoting *Jarman v. Reagan Outdoor Advertising*, 794 P.2d 492, 494 (Utah Ct. App.1990)). " '[Q]uestions of whether a contract is ambiguous because of uncertain meaning of terms ... [is a] question[ ] of law that must be determined by the court.' " *Id.* (quoting *Fitzgerald v. Corbett*, 793 P.2d 356, 358 (Utah 1990)).

" '[A] cardinal rule in construing ... a contract is to give effect to the intentions of the parties.' " *DeBry v. Occidental/Nebraska Fed. Sav. Bank*, 754 P.2d 60, 62 (Utah 1988) (quoting *Buehner Block Co. v. UWC Assoc.*, 752 P.2d 892, 895 (Utah 1988)). To assess whether a contract is ambiguous, and consequently, whether the intention of the parties is unclear, " '[t]he settled rule [for] interpreting a contract [is to] look to the four corners of the agreement to determine the intentions of the parties.' " *Palmer*, 808 P.2d at 132 (quoting *Ron Case Roofing & Asphalt v. Bloomquist*, 773 P.2d 1382, 1385 (Utah 1989).

The release agreement contains six clauses. Three of the six clauses directly relate to this motion. In the second clause, the signer agrees to accept all of the risks associated with the outing. In this clause, High Country enumerates some of the risks involved in snowmobiling, including the failure to follow instructions. The third clause states in bold print that the signer will not hold High Country liable, even if High Country or its employees act negligently. Finally, in clause five, the signer agrees to stop and follow instructions if encountering a hazardous situation. Otherwise, the signer agrees to assume all risk.

Zollman argues, and the court agrees, that clause five renders the release ambiguous. Clause five is susceptible of a reasonable interpretation that if Zollman stops and awaits instructions when encountering a hazardous situation, she does not assume the risk of an accident. This impression is strengthened by clause two which expressly lists failure to follow instructions as a risk assumed by the signer of the contract. By giving special attention to this risk, High Country has created the impression that the signer does not assume the risk of an accident that occurs when the signer encounters a hazardous situation and follows High Country's instructions. This impression is sufficient to render the contract ambiguous. Accordingly, the court denies High Country's motion because there is a factual question concerning whether the risk of injuries suffered as a result of following High Country's instructions was a risk assumed by High Country or by Zollman.

*C. Zollman's Motion for Partial Summary Judgment: The Exculpatory Clause*—Alternatively, Zollman and Smith move for partial summary judgment on grounds that the exculpatory clause violates public policy and is ambiguous.[8] It *does not follow that by denying High Country's motion, the court must grant Zollman's motion. High Country has pled the release agreement as an affirmative de-

fense to liability. In her motion for partial summary judgment, Zollman asks the court to strike this affirmative defense. Because the court, as expressed above, finds a factual question, Zollman's motion for partial summary judgment is denied.

## III. CONCLUSION

The court denies High Country's motion for summary judgment and Zollman's motion for partial summary judgment, because, the release agreement is ambiguous. Consequently, there is a factual question regarding whether the parties intended that High Country be released from liability if Zollman suffered injuries while following High Country's instructions.

---

8. Zollman also argues that the release agreement was not supported by adequate considera-

tion. Without further discussion, the court rejects this argument. *See supra* note 5.