Christina **GHIONIS**, Plaintiff,

v.

**DEER VALLEY RESORT COMPANY, LTD., a Utah limited partnership,** Defendant.

Civ. No. 92–C–0270 A.

United States District Court, D. Utah, C.D.

Dec. 7, 1993.

---

Christina Ghionis, pro se.

Gordon Strachan, Strachan & Strachan, Park City, UT, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

### I. *Background.*

Plaintiff Christina Ghionis ("Ghionis"), is a resident of Florida who visited Utah in March of 1990. While in Utah she decided to go skiing at Deer Valley resort owned by defendant ("Deer Valley"). Ghionis went into Deer Valley's rental shop with the intention of renting boots, skis and bindings. She had originally planned to use her own equipment which she had brought with her from Florida. However, she was told that her bindings were obsolete and, accordingly, decided to rent equipment prior to buying new equipment.

While in the rental shop, Ghionis was informed by Deer Valley certified technician that she could use her old ski boots with new bindings. Relying upon the technician's representations, Ghionis rented bindings and skis from the shop, but did not rent new boots. This was unfortunate because, contrary to the technicians representations, Ghionis's boots were not compatible with the leased bindings. Indeed, the manufacturer of the bindings expressly recommended against using its bindings with the type of boots owned by Ghionis.

Following the rental of the bindings and the skis, Ghionis signed up for a skiing lesson to familiarize herself with skiing in Utah. During the lesson, Ghionis's instructor pointed out a sign posted by Deer Valley talking about varying ski conditions. However, the instructor did not inform Ghionis or the other students of the increased risks of skiing in "crud" snow which exists during the spring in Utah. The instructor also failed to inspect Ghionis's equipment to determine if it was appropriate. If the instructor had done so, the incompatibility of the Ghionis's boots and bindings may have been noticed.

Approximately two hours into the ski lesson, Ghionis ran into crud snow and fell. Her bindings did not release, and Ghionis's knee was injured. Ghionis, who is a licensed attorney in Florida, brought this action against Deer Valley asserting negligence, product liability, and breach of express and implied warranties. Deer Valley then moved for summary judgment dismissing Ghionis's complaint because of a release signed by Ghionis at the time that she leased the bindings and skis. Deer Valley also moved for summary judgment under the Utah Inherent Risks of Skiing Act, Utah Code Ann. § 78–27–51 *et seq.* and because of its status as a lessor of equipment as opposed to a manufacturer or seller.

Having considered the matter, and drawing all factual inferences in favor of Ghionis, the nonmovant, the court is persuaded that summary judgment is inappropriate in this case.

## II. *Discussion.*

### A. *Standard of Review.*

Summary judgment is only appropriate when the moving party can show that there is no genuine issue of material fact, and that the party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In reviewing the evidence presented, the court is to construe all facts, and reasonable inferences therefrom, in favor of the non-moving party. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir. 1981). This is true, even though it might appear, weighing the evidence, that the moving party has the stronger case. For purposes of summary judgment, the court does not weigh the evidence. Instead, the court examines the evidence to determine if a reasonable jury could return a verdict in favor of the nonmoving party. If it can, summary judgment must be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Clifton v. Graig,* 924 F.2d 182, 183 (10th Cir.),

cert. *denied,* —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).

On the other hand, while the foregoing hurdle, in favor of summary judgment is high, it is not insurmountable. As the United States Supreme Court states: "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient," to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512. Further, if, after a reasonable time has passed for discovery, it can be shown that the nonmoving party cannot present evidence to show an essential element to that party's case, then summary judgment is available. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[1] Finally, summary judgment is appropriate to resolve issues of law, such as the meaning of statutes, and whether or not such statutes preclude the bringing of an action.

### B. *The Release Signed By Ghionis Is Ambiguous And May Not Be Relied Upon By Deer Valley To Escape Liability.*

■ Deer Valley's primary arguments in favor of summary judgment are based upon a Release Agreement (the "Release") signed by Ghionis in favor of Deer Valley at the time she rented the ski bindings and skis.[2] Under Utah law, which must be applied in

---

**1.** Rule 202(b)(4) of the Rules of Practice for the United States District Court for the District of Utah provides that all material facts asserted by a moving party are deemed admitted unless specifically controverted by the opposing party. If adequate time has not passed for the nonmoving party to gather evidence to oppose summary judgment, relief can be sought under F.R.C.P. 56(f). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

**2.** Pertinent provisions of the Release Agreement are as follows:

(1) I accept for use as is the equipment listed on this form, and accept full responsibility for the care of the equipment while it is in my possession.

\* \* \* \* \* \*

(3) I agree to hold harmless and indemnify the ski shop and its owners, agents and employees for any loss or damage, including any that results from claims for personal injury or prop-

erty damage related to the use of this equipment, except reasonable wear and tear.

\* \* \* \* \* \*

(5) I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport, and I freely assume those risks.

(6) I understand that the ski-boot-bind system will not release at all times or under all circumstances, nor is it possible to predict every situation in which it will release, and is therefore no guarantee for my safety.

(7) I hereby release the ski shop, and its owners, agents and employees from any and all liability for damage and injury to myself or to any person or property resulting from negligence, installation, maintenance, the selection, adjustment and use of this equipment, accept-

this diversity action,[3] exculpatory agreements are binding so long as they are clear and unequivocal in expressing the parties' agreement to absolve a defendant of liability. *See Walker Bank & Trust Co. v. First Security Corp.*, 341 P.2d 944, 947 (Utah 1959); *Pickhover v. Smith's Management Corp.*, 771 P.2d 664 (Utah App.1989). General language of release, however, without specificity as to the shifting of responsibility is not enough to relieve a party at fault from liability.

■ Deer Valley argues that the Release unequivocally protects it against claims for breach of express and implied warranties because it states at paragraph 1 that Ghionis accepts "for use as is the equipment listed on this form." It is Deer Valley's view that the use of the terms "as is" in paragraph 1 constituted an express disclaimer by Deer Valley that any implied warranties existed.

The problem with Deer Valley's view is that the terms "as is," as set forth in the Release,[4] are not "conspicuous" as contemplated by Utah Code Ann. § 70A–2a–214(3)(a).[5] The terms are not set apart with quotation marks or typed in a bold type. Instead, the terms are slipped into paragraph 1, without any indication to the average consumer that they are words of art with distinct legal meaning. Indeed, a review of paragraph 1, from a layman's perspective, is that it is primarily aimed at getting the renter's agreement to "care for the equipment while it is in [his or her] possession."[6]

The court declines, therefore, to find a disclaimer of warranties by Deer Valley.

■ The Release document is also ambiguous with regard to indemnity and the scope of the release. As this court pointed out in *Zollman v. Myers*, 797 F.Supp. 923, 927 (D.Utah 1992):

> [W]hether [an] exculpatory provision is ambiguous, and therefore, unenforceable, ... is a question of law (Citations omitted) ... [and] must be determined by the court. (Citation omitted.) ...
>
> " '[A] cardinal rule in construing ... a contract is to give effect to the intentions of the parties.' " (Citation omitted.) To assess whether a contract is ambiguous, and consequently, whether the intention of the parties is unclear, " '[t]he settled rule [for] interpreting a contract [is to] look to the four corners of the agreement to determine the intentions of the parties.' " (Citation omitted.)

In *Zollman* the court determined that a release given by a snow mobile park operator was ambiguous because it contained contradictory clauses, including a general release clause and a clause instructing a participant to stop and await instructions from the park operation in case of confronting a hazardous situation. Where the instructions given lead to injury, a reasonable person would assume the general release did not apply.

■ Like the release in *Zollman* the court finds the Deer Valley Release is ambiguous

---

ing myself the full responsibility for any and all such damage or injury which may result.

&ast; &ast; &ast; &ast; &ast; &ast;

(10) All instructions on the use of my rental equipment have been made clear to me, and I understand the function of my equipment.

**3.** *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**4.** See footnote 2 *supra*.

**5.** Utah Code Ann. § 70A–2a–214(3)(a) provides, in pertinent part:

[A]ll implied warranties are excluded by expressions like "as is," "with all faults" or other language *which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty,* if in writing and *conspicuous.* (Emphasis added.)

**6.** Throughout Deer Valley's memoranda, filed in support of its motion for summary judgment, Ghionis is referred to as "plaintiff/attorney." Deer Valley uses the description to ask the court to hold Ghionis to a higher standard than the average consumer vis-a-vis the terms of the Release. This court declines the request. Defendants who use form releases to escape liability for damage caused by their own fault, must be held to a standard that protects the average consumer who might be asked by that defendant to sign the form release. The mere fact that a consumer might be an attorney, or a sophisticated businessman or woman, does not relieve the defendant from drafting a release that is nonambiguous from a layman's perspective. *See Puritan Life Ins. Co. v. Guess*, 598 P.2d 900, 907 (Alaska 1979); *Koorstad v. Washington Nat'l Ins. Co.*, 257 Cal.App.2d 399, 64 Cal.Rptr. 882, 886–87 (1967).

in that it is conditioned upon the renter receiving and understanding instructions on the use of the rental equipment. See paragraph 10 of the Release.[7] Where those instructions are lacking or deceptive, as is claimed by Ghionis on the compatibility of her boots and the ski binding, the release clause of paragraph 7 does not apply. Similarly, the indemnity provision of the Release document is inapplicable.[8]

### C. Deer Valley May Not Rely Upon Ghionis's Assumption Of Risk To Escape Liability.

Deer Valley's next argument, in support of summary judgment, is that Ghionis assumed the risks which led to her injury. In that regard, Deer Valley notes that the Release states at paragraphs 5 that the renter of equipment is aware of the "inherent and other risks involved in [skiing] ... and ... freely assume[s] those risks." Further, paragraph 6 of the Release expressly recognizes the risk "that the ski-boot-binding system will not release at all times ... is, therefore, no guarantee for [the renter's] safety." Deer Valley also notes, in support of an assumption of risk defense, that at the time Ghionis rented the ski bindings and skis, there was playing in the background of the shop a video tape warning customers of the inherent dangers of skiing.

Ghionis's response to the assumption of risk argument is that while she may have been aware of the normal and usual risks of skiing, she was not aware of the particular risk which caused her injury, that being the incompatibility of the rented ski bindings and her boots. On the contrary, Ghionis argues that Deer Valley's personnel assured her that no incompatibility existed, and that it was not necessary for her to rent boots.

■ As noted by the Utah courts, assumption of risk requires a voluntary assumption of a *known* danger. *Mikkelsen v. Haslam*, 764 P.2d 1384, 1388 (Utah App.1988). Where the risk is not known because of the injured

party's reasonable reliance upon faulty instructions, assumption of risk does not exist. *Id.*

### D. Deer Valley, As A Lessor Of Equipment May Be Subject To Strict Liability.

■ Deer Valley argues that Ghionis's claim for strict products liability should be dismissed because it was not a manufacturer or seller of a product. The court disagrees. First, a finder of fact may determine that for all intents and purposes Deer Valley manufactured a ski equipment system for Ghionis consisting of skis, bindings and boots. To the extent the system was defective, exposing Ghionis to an unreasonable risk of danger, a strict liability claim may exist. Second, while no technical "sale" of equipment to Ghionis took place, the court is persuaded that the Utah courts will extend its rulings on strict product liability to apply to lessors of products such as Deer Valley. *See* Utah Code Ann. § 70A–2–312 *et seq.* (implied warranties exist in leased goods); Utah Code Ann. § 13–11–1 *et seq.* (Consumer protection to leases); *Wade v. Jobe*, 818 P.2d 1006 (Utah 1991) (recognizing trend in the law to protect consumers, including lessees).

■ Deer Valley's reliance upon *Conger v. Tel Tech, Inc.*, 798 P.2d 279 (Utah App.1990), to limit strict liability to "sellers" of products, is misplaced. In that case, the trial court granted a directed verdict dismissing a strict liability claim by a plaintiff who complained that defendant Tel Tech, Inc. negligently installed a cleaning system on a milk truck upon which he had been injured. The appellate court upheld the dismissal and published opinion has a headnote to the effect that a sale of a product is required for a strict liability claim. The problem with the headnote, and consequently the difficulty of Deer Valley's argument, is that a "sale" of a product did, in fact, occur in *Conger*. *Id.* at 281 n. 2. The actual basis of the dismissal of the

---

7. The language of the Release is set forth at footnote 2 *supra*.

8. Even if applicable, the indemnity provision of the Release, paragraph 3, would not provide protection to Deer Valley as it is capable of being

read by a lay consumer as only obligating the renter to an indemnity obligation where a third party has been injured as a result of the use of the shop's equipment by the renter.

strict liability claim was that plaintiff's injury arose not from the product itself, but rather the installation of the product. Consequently, no strict liability cause existed.[9] Deer Valley's reliance upon Utah Code Ann. § 78–15–6(1)[10] is also misplaced as a reading of the statute clearly indicates that the purpose of the section is *not* to restrict the class of potential defendants, but rather to impose a statutory restriction of *when* a product defect must have come into existence in order to be subject to strict liability.

The reasoning for applying strict liability to lessors of products is succinctly set forth by the Illinois Supreme Court in *Crowe v. Public Building Commission of Chicago,* 74 Ill.2d 10, 23 Ill.Dec. 80, 82, 383 N.E.2d 951, 953 (1978):

> The limiting language of the Restatement [ (Second) 2d Torts § 402A referring to sellers] has not deterred Illinois, or the majority of jurisdictions which have considered the question, from extending strict liability to lessors. (Citation omitted.) Courts have recognized that commercial leasing has become an increasingly practicable way for businesses to market their products. (Citations omitted.) The nature of a commercial transaction by which a product is placed in the stream of commerce is irrelevant to the policy considerations which justify strict liability. A lessor is subject to strict liability because his position in the "overall production and marketing enterprise" (citation omitted) is no different from that of a seller. Typically, the commercial lessor is within the original chain of distribution and reaps a profit by placing a product in the stream of commerce. At the point in the chain of distribution where the product passes through the hands of the lessor, he becomes as capable as a seller to prevent a defective product from proceeding through the stream of commerce.

In the context of ski shops, rental of ski equipment is a basic first step in the marketing process. Many beginning skiers, and skiers looking to upgrade their equipment, first rent equipment before putting out the heavy expense of purchasing new ski equipment. To only impose the potential of strict liability upon sellers of ski equipment would frustrate the basic purposes of Restatement (Second) 2d § 402A,[11] and would ignore the reality of the ski market.[12]

E. *The Utah Inherent Risks of Skiing Act Does Not Preclude A Ghionis Claim For Negligent Instruction.*

Deer Valley's final substantive argument in favor of summary judgement is that the Utah Inherent Risks of Skiing Act (the "Skiing Act"), Utah Code Ann. § 78–27–51 *et seq.,* bars the claim by Ghionis that Deer Valley negligently failed to warn her about the risks

---

9. Courts have consistently recognized the difference between leasing a product, for which strict liability is available, and servicing a product, for which strict liability is not available. *Compare Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970) (lessor of airplane strictly liable for defects in the airplane) *with Swenson Trucking & Excavating, Inc. v. Truckweld Equip. Co.,* 604 P.2d 1113, 1116 (Alaska 1980) ("strict liability applies to products not services").

10. Utah Code Ann. § 78–15–6(1) provides:

> In any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product (1) No product shall be construed to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.

11. The reference to "sellers" in Restatement (Second) 2d Torts § 402A is merely "a description of the situation that has most commonly arisen rather than as a deliberate limitation of the principle to cases where the product has been sold, intentionally excluding instances where a manufacturer has placed a defective article in the stream of commerce by other means." *Crowe v. Public Bldg. Com'n of Chicago,* 74 Ill.2d 10, 23 Ill.Dec. 80, 82–83, 383 N.E.2d 951, 952–53 (1978) *quoting Delaney v. Towmotor Corp.,* 339 F.2d 4, 6 (2d Cir.1964).

12. In *Persons v. Salomon North America, Inc.,* 217 Cal.App.3d 168, 265 Cal.Rptr. 773 (1990), a lessee of ski bindings was allowed to proceed on a strict liability claim for failure to warn. The court stated at 265 Cal.Rptr. page 779:

> Cornice was in the business of renting skis and bindings. It had an independent duty to exercise reasonable care in supplying this equipment and was itself subject to strict liability for failure to warn its customers of the dangerous propensities of the articles it rented.

of danger inherent in Utah's spring skiing conditions during her ski lesson. Deer Valley notes that the Skiing Act expressly provides that "no skier may make any claim against, or recover from, any ski operator for injury resulting from any of the inherent risks of skiing." Utah Code Ann. § 78–27–53. Among the statutorily recognized inherent risks of skiing are "changing weather conditions ... [and] snow or ice conditions," Utah Code Ann. § 78–27–52(1), which, Deer Valley asserts, were the causative factors of Ghionis's injury. Because Deer Valley posted "trail boards," listing the inherent risks of skiing and Deer Valley's limited liability under the Skiing Act, Utah Code Ann. § 78–27–54, Deer Valley claims immunity under the Skiing Act. This court disagrees.

The Utah Supreme Court stated in *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991), that the application of the Skiing Act must be determined on a case-by-case basis. *Id.* at 1044–45. This is because the Skiing Act was not intended to "alter ski resort liability," but was instead a legislative pronouncement that the existing common law protection available to ski resorts, such as the doctrine of primary assumption of risk, were to be preserved and not eroded by judicial action. *Id.* at 1045–46. That protection contemplated no "fault" on the part of the ski resort operator. As the Court noted:

> As we have noted in the past, the single term "assumption of risk" has been used to refer to several different, and occasionally overlapping, concepts. One concept, primary assumption of risk, is simply "an alternative expression for the proposition that the defendant was not negligent, that

is, there was no breach of an existing duty." (Citation omitted.) This suggests that the [Skiing Act], in clarifying the "confusion as to whether a skier assumes the risks inherent in the sport of skiing," [merely] operates to define the duty ski resorts owe their patrons.

*Id.* at 1046.

■ Where the ski resort operator is at fault, that is where the operator has breached a legal duty owed to a patron, the Skiing Act does not bar a suit by a patron. Expressed another way, legitimate claims of negligence against ski resorts are not prohibited by the Skiing Act. *Id.* at 1045 n. 38.

■ Applying the foregoing to Ghionis's claim against Deer Valley that her ski instructor negligently failed to warn her about spring skiing conditions in Utah, this court finds that the Skiing Act does not bar suit. This is because the court believes the duty owed by a ski resort to students enrolled in the resort's instructional programs, is significantly higher than that duty owed to nonstudent patrons of the resort.[13] The student pays a fee for ski instruction, and informs the resort that he or she is not knowledgeable about the skiing sport. The ski student is not in a position, through experience or knowledge to assume the risks of skiing, and relies upon his or her instructor to bring him or her up to the level of competence to assume those risks.[14]

■ A ski resort cannot take a student's money, and acknowledge the student's perceived level of competence, and then rely solely upon posted trail boards to satisfy its duty to instruct and warn.[15] What if the

13. The duty to warn owed to nonstudent patrons of a ski resort is set forth at Utah Code Ann. § 78–27–54. See *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1046 (Utah 1991).

14. In *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1046 n. 46 (Utah 1991), the Utah Supreme Court notes that "secondary assumption of risk ... refers to the unreasonable encounter *of a known and appreciated risk ....* Primary assumption of risk involves relationships where the defendant owes no duty of care to the plaintiff." (Emphasis added.)

15. The Utah Supreme Court has stated that in dealing with unclear statutes interpretations should be applied which will "best promote the

protection of the public." *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991). In *Adie v. Temple Mount Ski Area, Inc.*, 108 N.H. 480, 238 A.2d 738 (1968), the New Hampshire Supreme Court held that where a ski safety statute was silent as to ski instruction, the statute could not be used to bar a suit by an injured ski student. This court believes the Utah courts would agree with the New Hampshire approach. See *Clover*, 808 P.2d at 1045 n. 38. *See also Nolan v. Mt. Bachelor, Inc.*, 115 Or.App. 27, 836 P.2d 770 (1992). *Compare Philippi v. Sipapu, Inc.*, 961 F.2d 1492 (10th Cir.1992) (interpreting New Mexico law).

student was young and could not either read or understand the words used on the boards? How could the student assume the risks enumerated on the board? Statutes are to be interpreted to avoid "absurd consequences." *Id.* at 1045 n. 39.

### III. *Conclusion.*

Assuming the facts alleged by Ghionis to be true, and drawing all inferences in her favor, the court finds that factual and legal issues preclude the granting of summary judgment in Deer Valley's favor. The Release signed by Ghionis is ambiguous as it assumes that Ghionis had been properly informed as to the compatibility of her existing boots to the rented bindings. Ghionis could not assume risks of which she had no knowledge, and could reasonably rely upon the expertise of Deer Valley. To the extent Deer Valley rented a defective product, or manufactured the same, it is subject to strict liability principles. Finally, Deer Valley may not rely upon the Utah Inherent Risks of Skiing Act to avoid the consequences of not fulfilling its duties to ski student Ghionis.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Deer Valley's motion for summary judgment is DENIED.